UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARIE ACAJABON, | Case No. 1:16-cv-00183-MJS (HC) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |
| v. | |
| JANEL ESPINOZA, Warden | **(ECF NO. 1)** |
| Respondent. | **CLERK TO CLOSE CASE** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Janel Espinoza, Warden of Central California Women's Facility, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Lewis Albert Martinez of the Office of the California Attorney General. The parties have consented to Magistrate Judge jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (ECF Nos. 8, 10.)

Petitioner alleges her constitutional rights were violated as follows: (1) the trial court excluded a statement against interest given by the shooter; (2) Petitioner's trial counsel was ineffective in failing to secure the shooter as a witness; (3) the trial court

failed to instruct the jury sua sponte on the lesser offense of manslaughter based on a theory of imperfect self-defense; and (4) the trial court erred in instructing the jury on the "natural and probable consequence doctrine." (ECF No. 1.)

For the reasons stated below, the petition will be denied.

## I.    Procedural History

Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to the May 21, 2013 judgment of the Kings County Superior Court, imposing an indeterminate term of fifteen years to life for second degree murder. (Lodged Doc. 2 at 316-17.)

Petitioner appealed the judgment, raising the same four claims at issue in the instant petition. (Lodged Doc. 15.) On March 20, 2015, the California Court of Appeal for the Fifth Appellate District affirmed the judgment in a reasoned decision. (Lodged Doc. 18.) Petitioner filed a petition for review in the California Supreme Court (Lodged Doc. 19), which was summarily denied on June 10, 2015 (Lodged Doc. 20).

Petitioner filed the instant petition on February 10, 2016. (ECF No. 1.) On April 13, 2016, Respondent filed an answer. (ECF No. 14.) On May 27, 2016, Petitioner filed a traverse. (ECF No. 16.) A second traverse filed on May 31, 2016 appears to be a duplicate of the first. (ECF No. 17.) The matter is submitted.

## II.    Factual Background

The following facts are taken from the Fifth District Court of Appeal's March 20, 2015 opinion. They and are presumed correct. 28 U.S.C. § 2254(e)(1).

> The salient facts are as follows: On March 5, 2012, Acajabon drove Jason Reyes and Donald Simpson into Hanford from Alameda County. Upon arriving in Hanford, the group met up with Reyes's daughter, Michelle Reyes, and the four spent the afternoon smoking marijuana and consuming methamphetamine. Although Michelle had previously met Simpson, this was her first contact with Acajabon, whom her father referred to as "wifey." Later in the afternoon, after purchasing a train ticket back to Alameda for Simpson, the four stopped for food at a local McDonalds drive-through. At approximately 5:15 p.m., while the group was parked outside

2

of the McDonald's restaurant, Reyes stated that he had been thinking about "what he wanted to do" to a man named Armando Ramirez who lived in Hanford and had previously been convicted of molesting Michelle.[FN1] Ramirez ended up serving nine years in prison for the offense. Still in the parking lot, Reyes informed the group that he had thought a lot about what Ramirez had done to Michelle and that he wanted to "get that fool" or "[w]e are going [to] get that fool."

> [FN1: Tyla Gray, Michelle's mother, met Ramirez in Delano State Prison while visiting Reyes, also an inmate at the time. After Ramirez's release, he and Gray lived together for five months, during which time Michelle was molested.]

After leaving the McDonald's parking lot, Acajabon stopped at a red light, and Michelle noticed that Ramirez was a passenger in an adjacent car. Acajabon and Michelle were in the front seats with Simpson and Jason in the rear. As the car containing Ramirez made a left-hand turn into a nearby Rite–Aid, Reyes pulled out a handgun and told Acajabon to turn into the Rite–Aid as well. Being in the incorrect lane to make a left-hand turn, Acajabon drove her car over the divider to reach the Rite–Aid parking lot and then maneuvered her car into a parking spot facing the exit. Reyes exited the vehicle, approached Ramirez, and fatally shot him.

Afterwards, Reyes climbed back into Acajabon's car and she drove away from the scene, back to Michelle's apartment complex. Upon arriving at the complex, Acajabon, Reyes, and Michelle switched cars, and Simpson disappeared. Acajabon, Reyes, and Michelle spent the evening at a local drug house, and, at some point during the night, Acajabon and Reyes left Hanford. The two were later apprehended by police in Ventura, and Acajabon was subsequently convicted on one count of second degree murder.[FN2]

> [FN2: Reyes was found incompetent to stand trial and Simpson, who was arrested shortly after fleeing from Acajabon's car, was tried as a codefendant of Acajabon's and acquitted of all charges. Michelle was granted immunity in exchange for her testimony at Acajabon's trial.]

People v. Acajabon, No. F067381, 2015 WL 1308140, at *1–2 (Cal. Ct. App. Mar. 20, 2015), review denied (June 10, 2015).

3

**III.    Jurisdiction and Venue**

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that she suffered a violation of her rights as guaranteed by the U.S. Constitution. Petitioner was convicted and sentenced in this district. 28 U.S.C. § 2241(d); 2254(a). The Court concludes that it has jurisdiction over the action and that venue is proper.

**IV.    Applicable Law**

The petition was filed after April 24, 1996 and is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**A.    Standard of Review**

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v.

1   Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The

2   "clearly established Federal law" requirement "does not demand more than a 'principle'

3   or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state

4   decision to be an unreasonable application of clearly established federal law under

5   § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal

6   principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S.

7   63, 70-71 (2003).

8       A state court decision will involve an "unreasonable application of" federal law

9   only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-

10  10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). "[A]n unreasonable application of

11  federal law is different from an incorrect application of federal law." Harrington v. Richter

12  562 U.S. 86, 101 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state

13  court's determination that a claim lacks merit precludes federal habeas relief so long as

14  'fairminded jurists could disagree' on the correctness of the state court's decision." Id.

15  (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general

16  the rule, the more leeway courts have in reading outcomes in case-by-case

17  determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an

18  unreasonable application of clearly established Federal law for a state court to decline to

19  apply a specific legal rule that has not been squarely established by [the Supreme

20  Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

21          **B.      Requirement of Prejudicial Error**

22      In general, habeas relief may only be granted if the constitutional error

23  complained of was prejudicial. That is, it must have had "a substantial and injurious

24  effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.

25  619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the

26  Brecht standard applies whether or not the state court recognized the error and reviewed

27  it for harmlessness). Some constitutional errors, however, do not require a showing of

28

prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, claims alleging ineffective assistance of counsel are analyzed under the Strickland prejudice standard; courts do not engage in a separate analysis applying the Brecht standard. Strickland v. Washington, 466 U.S. 668 (1984); Avila v. Galaza, 297 F.3d 911, 918, n.7 (2002); Musalin v. Lamarque, 555 F.3d 830, 834 (9th Cir. 2009).

## C.    Deference to State Court Decisions

"[S]tate courts are the principal forum for asserting constitutional challenges to state convictions," not merely a "preliminary step for a later federal habeas proceeding." Richter, 562 U.S. at 103. Whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Id. at 102. In other words:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103. Thus, the Court may issue the writ only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. at 102.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Thus, the court will "look through" a summary denial to the last reasoned decision of the state court. Id. at 804;

6

1   Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Furthermore, the district

2   court may review a habeas claim, even where the state court's reasoning is entirely

3   unexplained. Richter, 562 U.S. at 98. "Where a state court's decision is unaccompanied

4   by an explanation, the habeas petitioner's burden still must be met by showing there was

5   no reasonable basis for the state court to deny relief." Id. ("This Court now holds and

6   reconfirms that § 2254(d) does not require a state court to give reasons before its

7   decision can be deemed to have been 'adjudicated on the merits.'").

8   **V.      Review of Petition**

9         **A.      Claim One: Exclusion of Reyes's Statement to Police**

10        Petitioner argues that she should have been permitted to introduce at trial

11  statements made by Reyes to the police that indicated Petitioner was unaware of

12  Reyes's intent to shoot Ramirez. Petitioner argues that the trial court erred in excluding

13  the statement and that the error violated her constitutional rights.

14               **1.      State Court Decision**

15        The California Supreme Court summarily denied this claim. Accordingly, the Court

16  "looks through" the Supreme Court's decision to the reasoned decision of the Fifth

17  District Court of Appeal. See Ylst, 501 U.S. at 804. The Court of Appeal rejected the

18  claim as follows:

19            ***I. Trial court did not err by excluding offered out-of-court
20            statements by Jason Reyes***

21            Acajabon alleges that the trial court erred by excluding an
            out-of-court statement by Reyes to the effect that Acajabon
22            did not know Reyes was going to shoot Ramirez. We
            disagree. We review the admission or exclusion of evidence
23            for an abuse of discretion. (People v. Brown (2000) 77
            Cal.App.4th 1324, 1337–1338.)
24
25                         ***A. Background***

26            During trial, defense counsel for Acajabon sought to admit
            out-of-court statements made to the police by Reyes under
27            the hearsay exception for statements against penal interest
            per Evidence Code section 1203. In the statements, Reyes
28

                                                7

told police that he had no plans to kill Ramirez that day and that it was "spur of the moment," and when asked if anyone else knew, he may have said, "No, it was fate." The People objected to the admission of the statements and, following oral argument, the trial court excluded the evidence, finding that defense counsel had not shown that Reyes was unavailable to testify and that the statement that Acajabon was unaware the shooting was going to take place was not a statement against Reyes's penal interest.

Following the conclusion of trial, Acajabon's counsel filed a motion for new trial, renewing his assertion that Reyes's out-of-court statements should have been admitted. Counsel argued that the statements were against Reyes's penal interest, and that Reyes was unavailable to testify as he was incompetent to stand trial and the hospital where he was committed had refused to comply with a court order to produce Reyes in court. After written briefing by the parties, the trial court denied Acajabon's motion. The trial court found that the statements were against Acajabon's penal interest, not Reyes's; that incompetence to stand trial is not the same as incompetence to testify; and that Acajabon's counsel failed to exercise due diligence in obtaining Reyes as a witness as counsel had not sought a continuance and had failed to timely serve Reyes's hospital with the court order to produce him at trial.

### B. Reyes's statements were not against his penal interest

Pursuant to Evidence Code section 1200, hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." The parties do not dispute that the statement by the shooter, Reyes, is offered for its truth, specifically that Acajabon did not know that a shooting was about to take place. Once established as hearsay, the next step is to determine whether an exception to the rule applies.

Under Evidence Code section 1230, otherwise inadmissible hearsay may be admitted "if the declarant is unavailable as a witness and the statement, when made ... so far subjected him to the risk of civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." Here, Acajabon argues that Reyes's out-of-court statement that no one in the car knew

that Reyes was going to shoot Ramirez was against Reyes's penal interest and should have been admitted. We disagree.

Setting aside for the moment the issue of Reyes's availability as a witness, it is simply not the case that the portions of Reyes's statements that Acajabon's counsel sought to admit were contrary to Reyes's penal interest. While it is true that Reyes admitted to killing Ramirez in his statement to police, Acajabon sought to admit the portions of the statement where Reyes claimed that Acajabon did not have knowledge of Reyes's intent to kill, and that the crime was "spur of the moment." Evidence Code section 1230, however, is "'inapplicable to evidence of any statement or portion of a statement not itself specifically disserving TO the interests of the declarant.'"" (People v. Lawley (2002) 27 Cal.4th 102, 153.)

Here, the portion of Reyes's statement concerning Acajabon's lack of foreknowledge does nothing in disservice to Reyes's penal interests. In fact, Reyes's assertion that the crime was "spur of the moment" could be interpreted as an attempt to mitigate Reyes's culpability for such charges as premeditated murder or conspiracy to commit murder. "'[T]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory nature.'" (People v. Lawley, supra, 27 Cal.4th at p. 153, quoting Williamson v. United States (1994) 512 U.S. 594, 599-600.) Accordingly, while Reyes's confession to shooting Ramirez was self-inculpatory, that confession did not increase the credibility of the non-self-inculpatory portions of Reyes's statement concerning Acajabon's lack of foreknowledge, and the trial court was correct to exclude the statements from evidence.

Moreover, in light of the close relationship between Reyes and Acajabon (introduced as "wifey" by Reyes to Michelle), Reyes certainly had motivation to minimize Acajabon's culpability, making his statement all the less trustworthy. "The question of '"whether a statement is self-inculpatory or not can only be determined by viewing it in context."' [Citations.] And to determine whether the statement is trustworthy, the trial court "'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.'"" (People v. Vasquez (2012) 205 Cal.App.4th 609, 620, italics added, quoting People v. Duarte (2000) 24 Cal.4th 603, 612.)3

### *C. Reyes was not unavailable to testify*

Even if Reyes's statements had been against his penal interest, they were still inadmissible under Evidence Code section 1230 as there was no showing that Reyes was unavailable as a witness. On appeal, Acajabon asserts two separate reasons why Reyes was unavailable as a witness. First, Acajabon notes that Reyes was found incompetent to stand trial himself and therefore was not competent to testify at Acajabon's trial. We disagree.

Under Evidence Code section 240, subdivision (a)(3), a declarant is unavailable as a witness if the declarant is "unable to attend or to testify at the hearing because of then-existing physical or mental illness or infirmity." While section 240 does not specifically define what qualifies as a mental illness or infirmity, Evidence Code section 701, subdivision (a), states that an individual is disqualified from testifying if he or she is "(1) [i]ncapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him; or [¶] (2)[i]ncapable of understanding the duty of a witness to tell the truth." By contrast, ""[a] defendant is incompetent to stand trial if he or she lacks a '"sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—[or lacks] ... a rational as well as a factual understanding of the proceedings against him."' [Citations.]"" (People v. Hung Thanh Mai (2013) 57 Cal.4th 986, 1032.)

Given this difference in definitions between capacity to testify and capacity to stand trial, we cannot conclude that the trial court abused its discretion by refusing to accept evidence of incapacity to stand trial as sufficient to establish incapacity to testify. The standards are simply not the same, and the trial court was fully entitled to require a more detailed showing of unavailability by Acajabon, who bore the burden of proving that Reyes was not competent to testify. (People v. Dennis (1998) 17 Cal.4th 468, 525.)

Second, Acajabon asserts that, even if Reyes were competent to testify, he was unavailable to testify because his presence could not be secured by service of process, despite the due diligence of Acajabon's trial counsel. Again, we disagree.

Under Evidence Code section 240, subdivision (a)(5), a declarant is unavailable as a witness if the declarant is "[a]bsent from the hearing and the proponent of his or her

statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." Diligence "connotes persevering application, untiring efforts in good earnest, efforts of a substantial character." (<u>People v. Linder</u> (1971) 5 Cal.3d 342, 347.) Relevant considerations include, """whether the search was timely begun [citation], the importance of the witness's testimony [citation], and whether leads were competently explored [citation.]."" (<u>People v. Cromer</u> (2001) 24 Cal.4th 889, 904.)

Here, Acajabon asserts that her trial counsel exercised due diligence by serving a transportation order on the hospital where Reyes was committed, but that the hospital refused to comply with the order. The record shows, however, that the order was signed on March 22, 2013, but was not delivered to the hospital by Acajabon's trial counsel until March 26, 2013, the day after trial began. The record also shows that Acajabon's counsel did not request a continuance after the hospital refused to comply with the transportation order, nor did he alert the trial court to the hospital's refusal to comply until April 2, 2013, five court days after the trial had commenced. Given this timeline, it is difficult to describe counsel's efforts to secure Reyes as "timely," "persevering," or "untiring." (<u>People v. Cromer</u>, supra, 24 Cal.4th at p. 904; <u>People v. Linder</u>, supra, 5 Cal.3d at p. 347.) As such, we do not find that the trial court abused its discretion by finding that counsel failed to exercise due diligence in securing Reyes as a witness, and that Reyes was therefore not unavailable under Evidence Code section 240, subdivision (a)(5).

<u>Acajabon</u>, 2015 WL 1308140, at *2-4.

## 2. Analysis

The Court of Appeal determined that Reyes's statement was inadmissible under state hearsay law. Respondent contends that this is a determination of state law that is wholly unreviewable in federal habeas. It is true that state determinations on matters of state law are generally not reviewable. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991) (holding that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (alleged error in interpretation or application of state law not a basis for federal habeas relief). Even if the exclusion of the statement was error

under California Evidence Code § 1230, failure to comply with state evidentiary rules is not a sufficient basis for granting federal habeas corpus relief. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). However, Petitioner could be entitled to federal habeas relief if the exclusion of Reyes's statements rendered Petitioner's trial fundamentally unfair.

Petitioner is entitled to "a meaningful opportunity to present a complete defense," Crane v. Kentucky, 476 U.S. 683, 690 (1986), and states may not impede a defendant's right to put on a defense by imposing mechanistic . . . or arbitrary . . . rules of evidence," LaGrand v. Stewart, 133 F.3d 1253, 1266 (9th Cir. 1998). Nonetheless, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." United States v. Scheffer, 523 U.S. 303, 308, (1998); see also Montana v. Egelhoff, 518 U.S. 37, 53 (1996) ("[T]he introduction of relevant evidence can be limited by the State for a 'valid' reason."). The Supreme Court has rarely held "the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 133 S.Ct. 1990, 1992, 186 L.Ed.2d 62 (2013) (per curiam). However, where an out-of-court statement substantially implicates the declarant's penal interest, "the hearsay rule may not be applied mechanistically to defeat the ends of justice." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). Finally, even if the exclusion of evidence amounts to a violation of due process, habeas relief may be granted only if the error had a substantial and injurious effect on the verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). In other words, the error must have resulted in "actual prejudice." Id.

Here, affording the California Court of Appeal's decision the level of deference required under 28 U.S.C. § 2254(d), the Court cannot conclude that the decision was an unreasonable application of clearly established Federal law or an unreasonable determination of the facts. The Court of Appeal concluded that the statements at issue were not, in fact, adverse to Reyes's penal interest. In particular, the Court of Appeals

12

noted that Reyes's comment that the shooting was "spur of the moment" could, in fact, mitigate Reyes's culpability. Because the challenged statements were not self-inculpatory, the trial court's decision to exclude them did not violate Petitioner's due process rights. See Williamson v. United States, 512 U.S. 594, 600-01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (holding that the statement against interest exception in Federal Rule of Evidence 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.").

Furthermore, even assuming the statement was erroneously excluded, Petitioner has not shown actual prejudice. At most, the statement shows that Reyes did not have a plan to shoot Ramirez prior to seeing him in traffic, and Petitioner was unaware of any such plan prior to that time. However, as noted elsewhere by the Court of Appeal, "[t]he evidence presented at trial . . . established that Reyes had stated in Acajabon's presence that he wanted to 'get' Ramirez; Reyes told Acajabon to follow the car carrying Ramirez when they observed Ramirez beside them at a traffic light; Reyes had a firearm; Acajabon followed the car and positioned her car in the Rite–Aid parking lot so as to be as close to the exit as possible; and Acajabon waited for Reyes to return to the car before driving away from the scene." Acajabon, 2015 WL 1308140, at *5. This evidence is sufficient to show that Petitioner was aware of Reyes's intent in pursuing Ramirez. In light of this evidence, the Court cannot conclude that the exclusion of Reyes's statement had "a substantial and injurious effect on the verdict." Brecht, 507 U.S. at 637.

Petitioner is not entitled to relief on this claim.

**B. Claim Two: Ineffective Assistance of Trial Counsel**

Petitioner argues that trial counsel was ineffective for failure to secure Reyes's presence at trial.

**1. State Court Decision**

The Fifth District Court of Appeal rejected this claim as follows:

> ***II. Acajabon was not denied effective assistance of counsel***

13

Acajabon argues in the alternative that, if this court concludes Reyes was not unavailable as a witness, her trial counsel was ineffective for failing to secure Reyes as a witness at trial. We disagree. A claim of ineffective assistance of counsel presents a mixed question of law and fact. (<u>People v. Jones</u> (2010) 186 Cal.App.4th 216, 235.) We review the questions of law de novo, and "[t]he factual findings of a trial court are entitled to deference 'only if substantial and credible evidence supports the findings.' [Citations.]" (<u>Id.</u> at p. 236.)

"The test for determining whether a criminal defendant received ineffective assistance of counsel is well-settled. The court must first determine whether counsel's representation 'fell below an objective standard of reasonableness.' [Citation.] The court then inquires whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citations.]" (<u>People v. Jones</u>, supra, 186 Cal.App.4th at pp. 234-235.) Here, while counsel's failure to exercise due diligence in securing Reyes as a witness can be construed as falling below an objective standard of reasonableness, Acajabon has not, and cannot, establish prejudice.

Had Reyes been secured as a witness and testified at trial, presumably his testimony would have been that he killed Ramirez and that he acted on the "spur of the moment." Testimony that Acajabon had no knowledge that Reyes was intending to commit murder would have been conclusory and speculative in light of the evidence adduced in trial and inadmissible for that basis. Lay witnesses may not give conjectural lay opinions. (See <u>People v. Thornton</u> (2007) 41 Cal.4th 391, 429.) The evidence presented at trial, however, established that Reyes had stated in Acajabon's presence that he wanted to "get" Ramirez; Reyes told Acajabon to follow the car carrying Ramirez when they observed Ramirez beside them at a traffic light; Reyes had a firearm; Acajabon followed the car and positioned her car in the Rite–Aid parking lot so as to be as close to the exit as possible; and Acajabon waited for Reyes to return to the car before driving away from the scene.

Even if produced at trial, the best testimony Reyes could offer is that he did not discuss a plan to "get" Ramirez; however, given the uncontroverted evidence above, a jury may have concluded from Reyes's hypothetical testimony, if believed, that Acajabon had no knowledge that Reyes intended to commit a murder before observing Ramirez in traffic, and that

> Acajabon knew or should have known that Reyes intended to kill Ramirez as soon as he directed Acajabon to follow the car in which Ramirez was riding.
>
> As Acajabon's conviction for second degree murder requires only intent and not premeditation, there was ample evidence to support her conviction, even if Reyes had testified in the manner in which Acajabon asserts he would have. Therefore, there is no reasonable probability that the result of the proceeding would have been different if Acajabon's trial counsel had secured Reyes as a witness, and Acajabon was not denied the effective assistance of counsel.

Acajabon, 2015 WL 1308140, at *4-5.

### 2. Applicable Law

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different."

Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of

16

clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 3.    Analysis

The Court of Appeal determined that Reyes's expected testimony was likely inadmissible. Regardless, the Court of Appeal determined that the testimony would not have affected the verdict because it did not negate the intent element of Petitioner's offense. The state court was not unreasonable in rejecting this claim. For the reasons stated above, Petitioner cannot show prejudice from the exclusion of this testimony. She has not meet the heavy burden imposed by <u>Strickland</u> and AEDPA. She is not entitled to relief on this claim.

### C.    Claim Three: Failure to Instruct on Imperfect Self-Defense

Petitioner claims the trial court violated her constitutional rights by failing to instruct sua sponte on the lesser-included offense of voluntary manslaughter based on the doctrine of imperfect self-defense.

17

## 1.    State Court Decision

The Court of Appeal rejected this claim as follows:

### III. Trial court did not err by failing to instruct jury on imperfect self-defense

Next, Acajabon argues that the trial court erred by failing to issue a sua sponte jury instruction on the lesser-included offense of voluntary manslaughter due to imperfect self-defense. We disagree.

A trial court has no duty to instruct on self-defense unless there is substantial evidence to support the defense. (People v. Curtis (1994) 30 Cal.App.4th 1337, 1355.) Imperfect self-defense applies when "the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense." (People v. Barton (1995) 12 Cal.4th 186, 201.) While imperfect self-defense does not justify a homicide, it may mitigate murder to voluntary manslaughter by negating the element of malice required for murder. (People v. Randle (2005) 35 Cal.4th 987, 994.)

Here, Acajabon claims that the doctrine of imperfect self-defense applied to this case as she assisted Reyes in killing Ramirez because she was afraid Reyes would kill her if she did not. This, however, is not a claim of imperfect self-defense; it is a claim of duress, which neither justifies nor mitigates murder. (People v. Anderson (2002) 28 Cal.4th 767, 780, 783.) Indeed, "[i]n contrast to a person killing in imperfect self-defense, a person who kills an innocent believing it necessary to save the killer's own life intends to kill unlawfully," and "[n]othing in the statutes negates malice in that situation." (Id. at p. 783.)

Accordingly, even if Acajabon's claim of fear for her life is accepted as true, her decision to assist in the killing of an innocent bystander in order to save her own life made her actions unlawful, and the doctrine of imperfect self-defense inapplicable. The court in Anderson concluded that, "as in Blackstone's England, so today in California: fear for one's own life does not justify killing an innocent person. Duress is not a defense to murder. We also conclude that duress cannot reduce murder to manslaughter. Although one may debate whether a killing under duress should be manslaughter rather than murder, if a new form of manslaughter is to be created, the Legislature, not this court,

should do it." (<u>People v. Anderson</u>, supra, 28 Cal.4th at p. 770.)

Therefore, we find no error in the trial court's decision not to instruct the jury on the lesser-included offense of voluntary manslaughter due to imperfect self-defense.

<u>Acajabon</u>, 2015 WL 1308140, at *5-6.

### 2.     Analysis

The Court of Appeal determined that the doctrine of imperfect self-defense was inapplicable to Petitioner's defense in this action and thus there was no error in failing to instruct the jury on the lesser included offense of voluntary manslaughter based on this theory. This is a determination of state law that is not reviewable in a federal habeas petition. <u>Estelle</u>, 502 U.S. at 71-72; <u>Middleton</u>, 768 F.2d at 1085.

In any event, "[u]nder the law of this circuit, the failure of a trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." <u>Windham v. Merkle</u>, 163 F.3d 1092, 1106 (9th Cir. 1998). <u>See also</u> <u>United States v. Rivera-Alonzo</u>, 584 F.3d 829, 834 n. 3 (9th Cir. 2009) ("In the context of habeas corpus review of a state court conviction, we have stated that there is no clearly established federal constitutional right to lesser included instructions in non-capital cases.")

### D.     Claim Four: Instruction on "Natural and Probable Consequences"

Petitioner contends that the trial court's instruction on the "natural and probably consequences" doctrine was erroneous and prejudicial.

### 1.     State Court Decision

The Court of Appeal rejected this claim as follows:

> ### IV. Acajabon not prejudiced by trial court's instruction that jury could find murder a natural and probable consequence of transportation of methamphetamine
>
> At trial, the jury was instructed that it could find Acajabon guilty of murder if it found that the murder was a "natural and probable consequence" of the transportation of methamphetamine. On appeal, Acajabon argues that she

19

was prejudiced by this instruction. While we agree that the instruction was erroneous, we disagree that Acajabon was prejudiced by it. We review de novo a claim that a court failed to instruct on the applicable principles of law. (<u>People v. Martin</u> (2000) 78 Cal.App.4th 1107, 1111.)

During jury instructions, the trial court informed the jury that Acajabon was guilty of murder (i) if she was guilty of transporting methamphetamine; (ii) if, during the commission of that transportation of methamphetamine, a coparticipant in that crime committed murder; and (iii) if a reasonable person in Acajabon's position would have known that the commission of murder was a natural and probable consequence of the commission of transporting methamphetamine.

While this instruction was an accurate statement of the "natural and probable consequences" doctrine, a trial court should only issue this instruction when "(1) the record contains substantial evidence that the defendant intended to encourage or assist a confederate in committing a target offense, and (2) the jury could reasonably find that the crime actually committed by the defendant's confederate was a 'natural and probable consequence' of the specifically contemplated target offense." (<u>People v. Prettyman</u> (1996) 14 Cal.4th 248, 269, italics added.)

In this case, however, there is no articulable dispute that the murder of Ramirez had anything to do with the transportation of methamphetamine. Instead, the murder was wholly motivated by Reyes's desire to "get" Ramirez in retaliation for the crimes Ramirez had committed against Reyes's daughter, Michelle. To say that the revenge murder of Michelle's abuser was a natural and probable consequence of Acajabon's transportation of methamphetamine with Reyes strains the natural-and-probable-consequences doctrine beyond the breaking point. Accordingly, we find that the instruction should not have been given.

Despite that, the issuance of an improper instruction is not, in isolation, sufficient to merit the reversal of a conviction. The instruction was, however, an accurate statement of the "natural and probable consequences" doctrine. Instructional error on natural and probable consequences is analyzed to see whether there is a reasonable probability the jury applied the instruction in an unconstitutional manner. (<u>People v. Hickles</u> (1997) 56 Cal.App.4th 1183, 1195.) We find no such error.

20

When a jury is presented with both a supported and unsupported ground for conviction, reversal is only required if there is an "affirmative indication in the record that the verdict actually did rest on the inadequate ground." (People v. Guiton (1993) 4 Cal.4th 1116, 1129.) "'"[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (Id. at p. 1126.) "An appellate court necessarily operates on the assumption that the jury has acted reasonably, unless the record indicates otherwise." (Id. at p. 1127.)

Here, while the jury was instructed on the unsupported "natural and probable consequences" theory of murder, it was also instructed that murder was the killing of another human being with malice aforethought, and was instructed that "[a] person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

"'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' [Citations.]" (People v. Campbell (1994) 25 Cal.App.4th 402, 409.) As noted above, a review of the evidence presented at trial shows Reyes had stated in Acajabon's presence that he wanted to "get" Ramirez; Reyes told Acajabon to follow the car carrying Ramirez when they observed Ramirez beside them at a traffic light; Reyes had a firearm; Acajabon followed the car and positioned her car in the Rite–Aid parking lot so as to be as close to the exit as possible; and Acajabon waited for Reyes to return to the car before driving away from the scene. Therefore, while the evidence may not have supported a murder conviction under the "natural and probable consequences" theory, there was an abundance of evidence to support a finding that Acajabon aided and abetted Reyes in the murder of Ramirez.

Similarly, the jury was told that, as to the instructions given, "Some of these instructions may not apply, depending on your findings about the facts of this case. Do not assume just because I [the court] give a particular instruction that I [the court] am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." The court will presume,

absent evidence to the contrary contained in the record, that the jury followed the instructions given and found that the natural-and-probable-consequences instruction was factually inapplicable. This assumption is appropriately buttressed by the substantial evidence of Acajabon's aiding and abetting, which was previously discussed.

Lastly, the record provides no indication that the jury relied on the unsupported "natural and probable consequences" theory and not the supported theory of accomplice liability for an intentional killing committed with malice aforethought. In the absence of such "affirmative indication in the record that the verdict actually did rest on the inadequate ground," Acajabon's conviction must stand. (People v. Guiton, supra, 4 Cal.4th at p. 1129.)

Acajabon, 2015 WL 1308140, at *6-7.

## 2. Applicable Law

Instructional error warrants federal habeas relief only if the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process[.]" Waddington v. Saruasad, 555 U.S. 179, 191 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Dixon v. Williams, 750 F.3d 1027, 1032 (9th Cir. 2014) (citation omitted). To warrant relief, the erroneous instruction must have had a substantial and injurious effect or influence in determining the jury's verdict. Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008) (per curiam) (citing Brecht, 507 U.S. at 623). The instruction "may not be judged in artificial isolation," but instead must be considered "in the context of the instructions as a whole and the trial record." McGuire, 502 U.S. at 72.

## 3. Analysis

The California Court of Appeal determined that the instruction on the "natural and probable consequences doctrine" accurately stated the law, but was erroneously given because it was unsupported by the evidence. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v.

1  McGuire, 502 U.S. 62, 67-68 (1991). This Court, therefore, must accept the Court of

2  Appeal's determination that the instruction was inapplicable.

3      Nonetheless, despite this error Petitioner is not entitled to relief on this claim. No

4  clearly established federal law "prohibits a trial court from instructing a jury with a

5  factually inapplicable but accurate statement of state law." Fernandez v. Montgomery,

6  182 F. Supp. 3d 991, 1011 (N.D. Cal. 2016); see also Steele v. Holland, 2017 WL

7  2021364, *8 (N.D. Cal. 2017) ("Petitioner does not cite, and the Court is not aware of any

8  clearly established law that constitutionally prohibits a trial court from instructing a jury

9  with a factually inapplicable but accurate statement of state law."); Martinez v. Hollond,

10  2015 WL 10044281, *18 (C.D. Cal. 2015) (Giving "'an instruction which is not supported

11  by the evidence is not a due process violation.'" (citation omitted)), report and

12  recommendation accepted by, 2016 WL 552679 (C.D. Cal. 2016); cf. Griffin v. United

13  States, 502 U.S. 46, 59-60 (1991) (it does not violate due process to instruct a jury on a

14  legal theory that lacks evidentiary support "since jurors are well equipped to analyze the

15  evidence"); Sochor v. Florida, 504 U.S. 527, 538 (1992) (stating that Griffin "held it was

16  no violation of due process that a trial court instructed a jury on two different legal

17  theories, one supported by the evidence, the other not" since a jury is "likely to disregard

18  an option simply unsupported by evidence."). Therefore, the state court's rejection of this

19  claim was not contrary to, or an unreasonable application of, clearly established federal

20  law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no

21  clear answer to the question presented, . . . it cannot be said that the state court

22  unreasonabl[y] appli[ed] clearly established Federal law." (citation and internal quotation

23  marks omitted; brackets in original)); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir.

24  2007) ("Where the Supreme Court has not addressed an issue in its holding, a state

25  court adjudication of the issue not addressed by the Supreme Court cannot be contrary

26  to, or an unreasonable application of, clearly established federal law.").

27

28
                                        23

## VI. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of her petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The federal rules governing habeas cases brought by state prisoners require a district court to either grant or deny a certificate of appealability in the order denying the habeas petition. See Rules Governing § 2254 Case, Rule 11(a). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, petitioner has not made such a showing. Accordingly, a certificate of appealability will not be issued.

## VII. Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. The petition for writ of habeas corpus is DENIED with prejudice;
2. The Court declines to issue a certificate of appealability; and
3. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated:   November 21, 2017      /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE